**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ──────────────────────────── ) | |
| **JACLYN C. GOODE,**                     ) | |
|                                          ) | |
| **Plaintiff,**              ) | |
|                                          ) | |
| **v.**                      ) | **Case No. 18-cv-01798 (APM)** |
|                                          ) | |
| **DB COMMUNICATIONS, LLC,**         ) | |
|                                          ) | |
| **Defendant.**              ) | |
| ──────────────────────────── ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

**I.      INTRODUCTION**

Plaintiff Jaclyn Goode is a former vice president ("VP") of Defendant DB Communications, LLC ("DB"), a marketing firm with offices in Washington, D.C., that operates under the trade name "Multiply."  Goode brings this suit claiming that she was discriminated against on the basis of sex after taking maternity leave, in violation of California's Fair Employment and Housing Act.  Goode worked for DB remotely in Los Angeles, so she brings her claims under California law.  Upon returning from maternity leave, Goode alleges that she was reassigned to less important client accounts that gave her less work, and that, just a few months later, she was fired.  Defendant DB now moves for summary judgment.  For the reasons stated below, the court denies DB's motion.

**II.      LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the

substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015).

In deciding a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial" and that a reasonable jury could find in its favor. *Elzeneiny*, 125 F. Supp. 3d at 28 (citing Fed. R. Civ. P. 56(e)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III.    DISCUSSION

Goode's claims arise under California's Fair Employment and Housing Act ("FEHA"), which prohibits an employer from taking an adverse employment action against an employee "because of" the employee's sex—among other protected characteristics. Cal. Gov't Code § 12940(a). FEHA's definition of "sex" "includes, but is not limited to": "[p]regnancy or medical conditions related to pregnancy," "[c]hildbirth or medical conditions related to childbirth," and "[b]reastfeeding or medical conditions related to breastfeeding." *Id.* § 12926(r)(1); *see also Trop v. Sony Pictures Entm't, Inc.*, 29 Cal. Rptr. 3d 144, 152 (Ct. App. 2005). The parties agree that California law applies, and, "[b]ecause of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [their] own statutes." *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1113 (Cal. 2000).

2

Goode advances two state-law discrimination claims, and DB moves for summary judgment on both.  *See* Def.'s Mot. for Summ. J., ECF No. 41 [hereinafter Def.'s Mot.], Def.'s Mem. of P. & A. in Supp. of Mot. for Summ. J., ECF No. 41-27 [hereinafter Def.'s Br.].  Goode's first claim is that DB discriminated against her on the basis of sex by (1) reassigning two of her accounts to a male colleague because she took maternity leave and (2) terminating her employment because she took maternity leave, both in violation of California Government Code §§ 12940(a) and 12926(r)(1).  *See* Decl. of Edward James McNamara, ECF No. 5, Ex. A, Compl., ¶¶ 28–36. Goode's second claim is that DB's failure to prevent this discrimination violated California Government Code § 12940(k).  *Id*. ¶¶ 37–43.  Section 12940(k) makes it unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov't Code § 12940(k).  The court considers these claims in turn and incorporates the relevant factual background as appropriate.

## A.     Discrimination on the Basis of Sex

### 1.     *Reassignment of Accounts*

DB first argues that it is entitled to summary judgment on Goode's claim that she was discriminated against when DB's president, Jessica Phlipot, permanently reassigned two of Goode's major accounts when she took maternity leave.  *See* Def.'s Br. at 6–12; Pl.'s Mem. of P. & A. in Supp. of Her Opp'n to Def.'s Mot. for Summ. J., ECF No. 44 [hereinafter Pl.'s Br.], at 9–10.  Goode took maternity leave between April 14, 2017, and August 7, 2017.  Def.'s Mot., Ex. A, Goode Dep. Tr., ECF No. 41-2 [hereinafter Goode Dep. Tr.], at 118:6–9, 18–24; Def.'s Mot., Def.'s Statement of Material Undisputed Facts, ECF No. 41-1 [hereinafter DMF], ¶ 86.  At that time, Goode was a VP assigned to DB's accounts for Ace Hardware, the firm's biggest client, as well as Basil Hayden and Knob Creek, two liquor brands.  *See* DMF ¶¶ 33, 84.  Goode had

3

worked on the Ace Hardware and Basil Hayden accounts continuously since she joined the company in 2010 and had worked on the Knob Creek account since 2016.  Pl.'s Br., Ex. A, Decl. of Jaclyn Goode, ECF No. 44-1 [hereinafter Goode Decl.], ¶ 3.  But as Goode prepared to take maternity leave, she was informed that DB's new hire, Karlsson Banks, would "cover" the Basil Hayden and Knob Creek accounts "because he had extensive experience managing these types of 'spirits' accounts."  *See* Def.'s Mot., Ex. F, Decl. of Jessica Phlipot, ECF No. 41-7 [hereinafter Phlipot Decl.], ¶ 4.  Phlipot further informed Goode that "if [Banks] did a good job while she was out, then most likely he would keep [the Basil Hayden and Knob Creek accounts]."  Def.'s Mot., Ex. C, Phlipot Dep. Tr., ECF No. 41-4 [hereinafter Phlipot Dep. Tr.], at 62:13–16; *id.* at 46:18–21 (testifying that, if Banks "did a good job with" Goode's former "accounts[,] they would likely stay with him"); Phlipot Decl. ¶ 4.

Banks, the employee who took over Goode's accounts, had been hired only recently as a VP in DB's New York office.  DMF ¶¶ 62–63.  The parties dispute *why* DB hired Banks in the first instance:  DB claims that Banks "was hired to replace [Kerry] Channon [an outgoing VP] and to help lead DB's New York office," *id.* ¶ 66, while Goode maintains that "Banks was hired to replace" her, as evidenced by DB's timeline for hiring him, *see* Pl.'s Br., Pl.'s Statement of Genuine Issues in Supp. of Opp'n to Def.'s Mot. for Summ. J., ECF No. 50-2 [Pl.'s Opp'n Facts], ¶ 59.  It is undisputed, however, that Kerry Channon, the VP whom DB claims Banks was hired to replace, DMF ¶ 63, resigned in July 2016.  *Id.* ¶ 58.  A few months later, in October 2016, Goode informed DB that she was pregnant.  Goode Decl. ¶ 10.  That same month, some three months after Channon resigned, DB retained a recruiter to assist in hiring another VP.  DMF ¶ 59. In February 2017, DB offered Banks the VP position.  *Id.* ¶ 62.  Banks did not begin working at DB, however, until April 2017, which the parties agree was "shortly before [Goode] began her

maternity leave" on April 14.  *See* Def.'s Reply Br. in Supp. of Mot. for Summ. J., ECF No. 56, Def.'s Resp. to Pl.'s Suppl. Statement of Material Facts, ECF No. 56-1 [hereinafter Def.'s Reply Facts], ¶ 21; DMF ¶ 63; Goode Dep. Tr. at 118:6–9.

Goode trained Banks on the Basil Hayden and Knob Creek accounts prior to taking leave, and he led the accounts in her absence.  DMF ¶¶ 84; Goode Decl. ¶ 12.  When Goode returned, DB kept Banks in charge of Goode's former Basil Hayden and Knob Creek accounts.  DMF ¶ 93. For her part, Goode remained assigned to the Ace Hardware account and was given two smaller, project-based accounts to manage.  Goode Decl. ¶¶ 14–15; DMF ¶¶ 87, 89, 92.  A few months later, in January 2017, Goode was terminated while Banks kept his VP position.  Def.'s Mot., Ex. Y, ECF No. 41-26 [hereinafter Def.'s Ex. Y]; DMF ¶ 129.

### a.   Adverse employment action

With these relevant facts in mind, DB claims that Goode's discrimination claim cannot survive because its reassignment of her accounts was not an "adverse employment action" within the meaning of FEHA.  *See* Def.'s Br. at 6–9.  "In California, an employee seeking recovery on a theory of unlawful discrimination or retaliation must demonstrate that he or she has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment . . . ."  *McRae v. Dep't of Corr. & Rehab.*, 48 Cal. Rptr. 3d 313, 319 (Ct. App. 2006). California courts have been clear that, even if an employment action does not reduce an employee's pay or benefits, it nonetheless may qualify as "adverse" if "it results in substantial and tangible harm."  *See id.* at 324–25; *Simers v. L.A. Times Commc'ns, LLC*, 227 Cal. Rptr. 3d 695, 721 (Ct. App. 2018) ("[A] job reassignment may be an adverse employment action when it entails materially adverse consequences."); *see also Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1139 (Cal. 2005) ("[A]dverse treatment that is reasonably likely to impair a reasonable employee's job

5

performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of Section 12940(a) . . . .").  The primary question before the court, then, is whether Goode has presented sufficient evidence to create a triable issue of fact as to whether her reassignment from the Basil Hayden and Knob Creek accounts resulted in "substantial and tangible harm."  *McRae*, 48 Cal. Rptr. at 324–25.

The court concludes that Goode has made such a showing.  Goode has provided testimony that her reassignment from the Basil Hayden and Knob Creek accounts to two smaller, project-based accounts put her "in a position of significantly lowered priority and importance to the company, making it easy for the[] [company] to terminate [her] employment at the end of the year, which [it] did."  Goode Decl. ¶ 16.  A reasonable jury could find that circumstantial evidence in the record supports Goode's belief that her reassignment to two smaller accounts contributed to her termination.  To begin, Goode had worked on the Basil Hayden account since she started with the company in 2010, *id.* ¶ 3, and she was reassigned from the account only when she left for maternity leave, DMF ¶ 84.  DB then assigned the accounts to Banks, whom it started recruiting just after Goode gave notice that she was pregnant and who started at DB only a week before Goode left for maternity leave.  Goode Decl. ¶¶ 10–11; DMF ¶¶ 59, 80, 83, 93; Def.'s Reply Facts ¶ 21.  This sequence of events led one of Goode's colleagues to testify that "the writing was on the wall" that Banks had been hired to supplant Goode.  Pl.'s Br., Ex. B, Lynch Dep. Tr., ECF No. 50-5 [hereinafter Lynch Dep. Tr.], at 84:11–19.  Thereafter, Goode was fired, but Banks was retained.  Def.'s Ex. Y; DMF ¶ 129.

Viewing this evidence in the light most favorable to Goode, a reasonable jury could find that DB's decision to reassign Goode from two larger accounts—one of which she had worked on for seven years—to two smaller accounts with temporary projects, while hiring another VP who

took over Goode's larger accounts, made Goode more expendable to DB and contributed to the firm's decision to terminate her employment during its reorganization. That is, a reasonable jury could conclude that the reassignment of two of Goode's accounts substantially and tangibly affected her continued employment with the company by ultimately contributing to her termination. Therefore, the court will reserve the question of whether DB's reassignment of Goode's accounts is an adverse employment action for the jury. *See Simers*, 227 Cal. Rptr. at 722 (finding "it was entirely reasonable for jurors to conclude" that a reassignment that "involved a change in status and a less distinguished title, and a significant change in job responsibilities" "was necessarily accompanied by materially adverse consequences" (alteration omitted) (internal quotation marks omitted)).

b. <u>Discriminatory intent</u>

Of course, FEHA proscribes only *discriminatory* adverse employment actions, and Goode must provide sufficient evidence from which a jury could reasonably conclude that DB reassigned her because she took maternity leave. *See* Cal. Gov't Code § 12940(a). Where there is direct evidence of discrimination—that is, "evidence which proves a fact without inference or presumption," *Trop*, 29 Cal. Rptr. 3d at 153—the plaintiff is entitled to a jury trial so long as "there is evidence of a causal relationship between" such direct evidence "and the adverse job action at issue." *DeJung v. Superior Ct.*, 87 Cal. Rptr. 3d 99, 111 (Ct. App. 2008); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (noting plaintiff need not make out a prima facie case if she "presents direct evidence of discrimination"); *Stone v. Landis Constr. Corp.*, 442 F. App'x 568, 569 (D.C. Cir. 2011) (per curiam) (finding, "[i]n light of" a discriminatory comment, plaintiff "was entitled to a jury trial" (alterations omitted) (internal quotation marks omitted)). "Direct evidence of discriminatory intent in pregnancy discrimination cases generally

is in the form of an admission by a supervisor or decision maker that the" adverse employment action was taken "because she was pregnant." *Trop*, 29 Cal. Rptr. 3d at 155 (quoting *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir. 1998)).  Under California law, if a plaintiff provides direct evidence of discrimination, she must also prove that the discrimination evinced by the allegedly discriminatory comment was a "substantial motivating factor/reason" for the adverse employment action.  *Harris v. City of Santa Monica*, 294 P.3d 49, 66 (Cal. 2013) (internal quotation marks omitted).

Goode has presented direct evidence that her maternity leave was a substantial motivating factor in DB's decision to reassign the Basil Hayden and Knob Creek accounts.  DB has conceded that its president, Jessica Phlipot, said that the company would "assign Karlsson Banks the Basil Hayden and Knob Creek accounts" because Goode was taking maternity leave, Phlipot Decl. ¶ 4, and that, "if he did a good job while she was out, then most likely he would keep them," Phlipot Dep. Tr. at 62:13–16; *see also id.* at 46:7–21 (testifying that once Goode returned, "we would have new business that she could work on," but Banks would "keep" the Basil Hayden and Knob Creek accounts "if he did a good job").  As these comments reveal, Phlipot cited Goode's maternity leave as the reason the accounts would be transferred to Banks in the first place and thereafter decided not to restore Goode to the accounts.  Phlipot Decl. ¶ 4.  Moreover, the facts indicate this conversation was contemporaneous with Goode's maternity leave, as Phlipot informed Goode of the changes to her employment before she went on leave, DMF ¶ 80, and DB concedes that Phlipot was in charge of reassigning Goode's accounts, *id.* ¶ 83.  Phlipot's comments therefore constitute direct evidence that Goode's pregnancy and subsequent maternity leave were a substantial motivating factor in the company's decision to reassign her accounts.  *Cf. DeJung*, 87 Cal. Rptr. at 111–12 (finding comments that company was looking to fill a position with someone "younger"

constituted direct evidence of age discrimination).  Accordingly, Goode is entitled to a jury trial on her claim that DB discriminated against her on the basis of sex when it reassigned two of her accounts to Banks.

>    2.    *Termination*

DB next argues that it is entitled to summary judgment on Goode's claim that her termination in January 2017 was discriminatory.  When, as on this second claim, a plaintiff relies on circumstantial evidence to prove discriminatory intent, "California has adopted the three-stage burden-shifting test established by the United States Supreme Court [in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)] . . . ."  *Guz*, 8 P.3d at 1113; *see also Trop*, 29 Cal. Rptr. at 152 (applying *McDonnell Douglas* test in pregnancy discrimination case).  The *McDonnell Douglas* test proceeds in three parts:   (1) the plaintiff must first "establish a prima facie case of discrimination," thereby creating a presumption of discrimination; (2) "the burden [then] shifts to the employer to rebut the presumption by producing admissible evidence that its action was taken for a legitimate, nondiscriminatory reason"; and (3) "[i]f the employer sustains this burden," the plaintiff must present evidence establishing that "the employer's proffered reasons" for the adverse employment action were "pretexts for discrimination."  *Guz*, 8 P.3d at 1113–14.  To establish a "prima facie case of discrimination," the plaintiff must generally "provide evidence that (1) [s]he was a member of a protected class, (2) [s]he was . . . performing competently in the position [s]he held, (3) [s]he suffered an adverse employment action[,] . . . and (4) some other circumstance suggests discriminatory motive."  *Id.* at 1113.

DB does not challenge Goode's prima facie showing of discrimination, but instead argues it is entitled to summary judgment because it has offered legitimate, nondiscriminatory reasons for terminating Goode, and Goode cannot establish that those reasons are pretextual.  Def.'s Br.

at 13–16.  Specifically, DB contends that "the dire financial circumstances caused by the loss of [a large customer's] accounts" led to a "reorganization and reduction in force formulated to respond to the loss of those accounts."  *Id.* at 13.  That reorganization, DB claims, "focused on the New York office" and reducing the number of VPs.  *Id.* at 14; DMF ¶ 111.  According to DB, Goode was terminated because she was a VP who did not work in the New York office.  *See* Def.'s Br. at 14.

As a threshold matter, to the extent that DB claims its reorganization is a legitimate, nondiscriminatory reason for Goode's termination, that defense does not inoculate it against a discrimination claim.  "Downsizing alone is not necessarily a sufficient explanation, under the FEHA, for the consequent dismissal of a protected worker."  *Kelly v. Stamps.com Inc.*, 38 Cal. Rptr. 3d 240, 247 (Ct. App. 2005) (alterations omitted) (internal quotation marks omitted). "Invocation of a right to downsize does not resolve whether the employer had a discriminatory motive for cutting back its work force, or engaged in intentional discrimination when deciding which individual workers to retain and release."  *Guz*, 8 P.3d at 1115.  Thus, while Goode argues that DB did not need to reduce its work force, and was in fact not reducing its work force, *see* Pl.'s Br. at 16–19, the court need not reach those arguments.  Instead, it may properly focus its assessment of pretext on DB's claimed non-discriminatory rationale that the company carried out its reorganization by concentrating on its New York office and reducing the number of VPs.

On that score, Goode first argues that DB's timeline for hiring Banks, a male, and its decision to retain Banks over Goode creates a genuine dispute as to DB's explanation that Goode was terminated as part of the reorganization rather than due to pregnancy discrimination.  *See* Pl.'s Br. at 10–11, 19–21.  The court agrees.  DB first hired a recruiter to fill the position it ultimately gave to Banks shortly after Goode informed the firm that she was pregnant.  *See* DMF ¶ 59; Goode

Decl. ¶ 10.  DB then had Banks begin work one week before Goode left for maternity leave and assigned Banks to two of Goode's former accounts explicitly because Goode was taking maternity leave.  DMF ¶¶ 63, 80–81, 83–84; Goode Decl. ¶ 12.  Thereafter, DB had Banks retain Goode's former accounts even after she returned.  DMF ¶ 93.  Goode instead was assigned two small, project-based accounts that she testified involved substantially less work than the accounts given to Banks and that concluded toward the end of 2017.  *See id.* ¶¶ 89, 91–92; Goode Decl. ¶¶ 14–16. Ultimately, DB terminated Goode—a seven-year veteran of the company—but kept Banks, who had started at the company just seven months before Goode was terminated.  *See* DMF ¶¶ 63, 130, 174.  A reasonable jury could conclude from this sequence of events surrounding Goode's pregnancy that DB's decision to let go of Goode, but retain Banks, was motivated by her sex.

DB claims that it took these actions because Banks had "expertise and experience with the 'spirits' brand industry."  Def.'s Br. at 10.  But beyond the conclusory and vague assertion that Banks "had extensive experience managing these types of 'spirits' accounts," DMF ¶ 83, DB does not explain what that experience was.  Nor does it explain how or whether Banks's "spirits" experience made him a better or more experienced fit for Goode's accounts than Goode herself. After all, Goode had worked on the Basil Hayden account continuously since beginning her career at DB in 2010, Goode Decl. ¶ 3, and DB offers no evidence to suggest that Goode performed poorly on the account or that the client was unhappy with her work.  Without further evidence of why Banks was *permanently* given Goode's accounts, DB cannot overcome Goode's showing of circumstantial evidence indicating DB's reasons for reassigning her work and then terminating her shortly thereafter were pretextual.  At trial DB will have the opportunity to prove that its timeline for hiring Banks and terminating Goode was innocent coincidence, but, viewing the evidence in

the light most favorable to Goode, the court here finds that there is a triable question of fact as to whether DB's proffered reasons for Goode's termination were pretext for discrimination.

Second, DB's termination of another new mother, Molly Lynch, as part of the reduction in force supports a reasonable inference of discrimination. *See* Pl.'s Br. at 8, 14–16 (discussing how reorganization plan discriminated against the company's new mothers). Lynch joined DB in 2013 and, like Goode, was working as a VP when she was terminated. DMF ¶¶ 140–141. She took maternity leave from January 19, 2017, until the first week of May 2017, and was terminated in November of that same year. *Id.* ¶¶ 140, 146. Goode and Lynch stand out from the other employees that DB terminated or demoted, which include Jon Cunningham, a senior vice president, *id.* ¶ 124; Kurt Williams, a director of operations, *id.* ¶ 138; and Ryan Vaughan, a VP, *id.* ¶ 150. *Id.* ¶ 121 (noting who was terminated and demoted "[a]s part of the reduction in force and reorganization"). First, as to Cunningham, while DB maintains that he was not terminated for cause, DB does not deny that Cunningham "was not performing," both in his leadership role in the New York office and in his accounts with major clients like Beam Suntory. *See* DMF ¶¶ 68, 134, 136 (noting issues with Cunningham's leadership in the New York office); Phlipot Dep. Tr. at 55:1–8 ("Jon was not performing. He was removed from his—from the Beam accounts that he was on."). Unlike with Cunningham, DB did not raise any performance issues with Goode or Lynch. Thus, the fact that Cunningham, a male, was terminated does not shield DB from the accusation that sex was a substantial factor in Goode's firing. As for Williams and Vaughan, they were new additions to DB's leadership team. Williams was hired in February 2017, just nine months before he was terminated, and his position was consolidated with the finance director position. *See* DMF ¶¶ 137–139. Likewise, Vaughan was not promoted to VP until January 2017, some ten months before he was demoted to a senior strategist, earned media and measurement.

*See id.* ¶ 39; Phlipot Decl. ¶ 10.   Goode and Lynch, in contrast, were hired in 2010 and 2013, respectively, DMF ¶¶ 20, 141, with Goode making VP in 2014, *id.* ¶ 33, and Lynch doing so in 2016, Goode Dep. Tr. at 76:24–77:3.  The two women therefore had held their respective positions longer than Williams and Vaughan had when they were terminated, and DB's decision to retain two less-experienced men over two more-experienced new mothers supports Goode's claim of discrimination.

Third, the evidence suggests that, among those either terminated or demoted, DB asked only Goode and Lynch to sign a waiver of any discrimination claims against DB in exchange for severance pay.  Pl.'s Br. at 14.  DB does not dispute this characterization of the record.[1]  A reasonable jury could construe such different treatment of the two new mothers as additional evidence that DB's reasons for Goode's termination were pretext for discrimination based on sex.

Finally, all of the foregoing must be viewed in light of the fact that DB's president expressly told Goode that she was reassigning two of Goode's accounts to Banks because Goode was going on maternity leave, and that, even after Goode returned from leave, the accounts were Banks's to lose.  *See* Phlipot Dep. Tr. at 62:13–16; *see also id.* at 46:7–21.  Goode was thereafter placed on accounts with only short-term projects, which wrapped just before the winter holidays, right around when DB offered Goode a severance package.  *See* Goode Decl. ¶¶ 14–16; DMF ¶ 172 (noting the severance package was sent to Goode on December 20, 2017).  The court finds

---

[1] While the record is clear that Cunningham was not offered a severance package, DMF ¶ 127, neither party has presented evidence of whether Williams was offered a severance package or asked to sign a waiver.  Goode claims in her brief that "[t]he only employees offered severance for a waiver of their right to sue were the two new mothers," Pl.'s Br. at 14, but her citation merely establishes that Lynch was also offered a severance package, *see* Pl.'s Opp'n Facts ¶¶ 32–33.  DB, however, does not rebut Goode's statement that Goode and Lynch were the only employees to be offered a severance package in exchange for a waiver.  Because DB, as the movant, bears "the burden of showing that there is no genuine issue of fact," *Anderson*, 477 U.S. at 256, the court concludes that there is a triable issue of fact as to whether DB singled Goode and Lynch out to receive severance packages in exchange for a waiver of claims against the company.

that this sequence of hiring Banks, reassigning Goode's work, and terminating Goode creates a genuine issue of fact as to whether DB exploited Goode's maternity leave as an opportunity to reassign her from major accounts at the company and ultimately terminate her employment entirely.

The court thus concludes that Goode has presented sufficient evidence to create a triable issue of fact as to whether DB's reasons for her termination were a pretext for discrimination on the basis of sex.  Accordingly, DB's motion for summary judgment on Goode's claim that her termination was discriminatory is denied.

### B.    Failure to Prevent Discrimination

Finally, DB moves for summary judgment on Goode's claim for failure to prevent discrimination pursuant to California Government Code § 12490(k).  Def.'s Br. at 18–19. DB's only argument for summary judgment on this claim is that a Section 12490(k) violation cannot lie where a plaintiff "cannot prove any actionable discrimination."  *Id*. at 18.  Because the court concludes that there is a triable issue of fact as to whether DB discriminated against Goode by reassigning her from the Basil Hayden and Knob Creek accounts and by terminating her employment, the court will not grant DB summary judgment on Goode's claim under Section 12490(k).

14

**IV.      CONCLUSION AND ORDER**

For the reasons stated above, the court denies Defendant's Motion for Summary Judgment, ECF No. 41.  The parties shall appear for a telephonic status conference on January 6, 2021, at 11 a.m. to discuss a schedule for further proceedings in this matter.

Dated:  December 16, 2020

Amit P. Mehta
United States District Court Judge